CASE 63—PETITION EQUITY—APRIL 23.

## Seeley v. Mitchell's Assignee.

APPEAL FROM WARREN CIRCUIT COURT.

1. PARTNERSHIP LAND—MORTGAGES.—Land conveyed to members of a copartnership as tenants in common, but purchased with copartnership funds and used for copartnership purposes, is treated in equity as copartnership property, and the creditors of the copartnership are

Seeley v. Mitchell's Assignee.

entitled to priority of payment out of it in preference to the creditors of the individual members of the firm. But if one member of the copartnership mortgages his apparent interest as tenant in common of such land for a consideration paid him at the time, *the mortgagee having no notice of the character of the property in equity as copartnership property*, he is entitled to hold it under his mortgage in preference to the partnership or its creditors.

2. JUDICIAL SALES—LIS PENDENS.—C. executed a mortgage to M. after a judgment in favor of R., for the enforcement of a lien upon the same property had been rendered. R. assigned his judgment to S. In an action to which both M. and S. were parties, S. set up the judgment lien which R. had assigned to him, and asked for its enforcement, and M. thereupon asked for the enforcement of his mortgage lien, subject to the judgment lien of S. Pending this action S. had the property sold under the judgment which was assigned to him, and became the purchaser, and in response to M.'s pleading asserting a lien he claims the property absolutely. *Held*—That the conduct of S. must be held to have been an abandonment of his right to enforce his judgment ·save in this action, and he cannot now be heard to say that M. acquired his lien *pendente lite*.

3. PARTIES TO APPEAL.—The court cannot, upon appeal, review a settlement of partnership accounts, one of the partners not being a party to the appeal.

WRIGHT & McELROY FOR APPELLANT.

1. The court erred to the prejudice of appellant in the settlement of the accounts of the firm of Campbell & Seeley.

2. Appellant has a lien for the amount due him, upon a settlement of the partnership, superior to the liens of appellees. A mortgage upon partnership property to secure a partner's individual debt passes only what interest such partner may have after paying the debts of the copartnership. (Jones on Mortgages, vol. 1, sec. 120 ; 4 B. Mon., 488.)

3. As to the character of real estate when used for partnership purposes. (4 B. Mon., 488; 6 Bush, 369; 8 Bush, 672.)

4. Even if appellant knew that his partner was going to mortgage his interest, and made no objection, he is not estopped to assert a superior lien. (West, &c., v. Armstrong, &c., 4 Bush, 998.)

5. Appellant acquired a perfect title by his purchase of "Kopley Knob," and the court erred in adjudging that he had only a lien.

It is the policy of the law to sustain judicial sales unless some unconscionable advantage has been taken, and the title passes, although the proceedings were erroneous. (8 B. M., 105; 2 Bush 201; 8 Bush, 298; 14 Bush, 494.)

6. Appellant was not a *lis pendens* purchaser; but even conceding that he was, appellee, by his long delay in enforcing his claim, is deprived

Seeley v. Mitchell's Assignee.

of the right to rely upon that fact.   (2 Bush, 59; 2 Dana, 406; 6 B.
M., 477; 10 Bush, 433.)

RODES & SETTLE for whitehead's ex'r, appellee.

1. To entitle appellant to a lien superior to that created by the mortgage
   to Mrs. Whitehead, he must show that the mortgaged property was
   *partnership* property at the date of the mortgage, and that the mort-
   gagee knew that fact.   (Jones on Mortgages, secs. 119 and 120;  Boone
   on Mortgages, sec. 26.)
       There is nothing in the record to show that the partnership existed
   at the time of the execution of the mortgage; or, if it existed, that
   Mrs. Whitehead know of its existence.

EDWARD W. HINES for mitchell's assignee, appellee.

1. As Campbell is not a party to this appeal, the settlement of the part-
   nership accounts of Campbell & Seeley can not be reviewed.
2. Appellant is not entitled to a superior lien upon the partnership prop-
   erty, because he fails to show that the partnership was formed before
   the mortgages to appellees were executed, and for the further reason
   that it does not appear that appellees had any notice of the partner-
   ship when their mortgages were executed.  (Jones on Mortgages,
   secs. 119 and 120.)
3. The long delay of appellant in enforcing the decree under which he
   purchased the "Kopley Knob" property, deprived him of the right
   to enforce the decree without a supplemental proceeding.   A decree
   of sale must be executed within a reasonable time if the plaintiff
   would preserve the *lis pendens*.  (Erhman v. Hendrick, 1 Met., 149;
   Watson v. Wilson, 2 Dana, 411;  Petree v. Bell, 2 Bush, 59;  Rorer on
   Judicial Sales, sec. 476;  Michie v. Planters' Bank, 34 Am. Dec., 112;
   S. C., 4 How.)
4. But even if that be not true, yet the appellant, having instituted such
   a proceeding, had no right to have the decree executed without any
   further order of court.   Appellee had the right to believe the whole
   matter would be settled in the new action.

JUDGE HOLT delivered the opinion of the court.

We can not review the accounts between the appel-
lant, E. B. Seeley, and D. B. Campbell, as partners
composing the firm of Campbell & Seeley, because
Campbell is not a party to this appeal.  They are,
therefore, not now involved.

The deed of Campbell to Seeley to an undivided one-

half of the mill property was dated and acknowledged
in February, 1881, and recorded on March 8, 1881.   The
mortgage given to Mrs. Whitehead by Campbell upon
the remaining half, was executed on March 24, 1881, and
that to Albert Mitchell on the succeeding day.   The
appellant, Seeley, now contends that for advancements
made by him to the firm of Campbell & Seeley, and
for its indebtedness to him and to its creditors, he has
a lien superior to that of the mortgagees upon the half
interest so mortgaged.

It is not contended that the partnership existed prior
to the time of the conveyance by Campbell to Seeley.
It is not shown that any firm indebtedness was created,
or any firm business transacted, prior to the time when
the mortgages were executed, unless in a single in-
stance; and the debt which may then have been cre-
ated was, some time after its inception, embraced with
other debts in a joint note, nearly all of which was
subsequently paid off with firm means; and in any
event it does not appear that the mortgagees, when
they became such, knew of the existence of the firm,
if, indeed, it was then in being.

In Jones on Mortgages, volume 1, sections 119 and
120, it is said: " Land conveyed to members of a co-
partnership as tenants in common, but purchased with
copartnership funds and used for copartnership pur-
poses, is treated in equity as copartnership property.
The creditors of the copartnership are in such case
entitled to priority of payment out of it in preference
to the creditors of individual members of the firm.
But if one member of the copartnership mortgages
his apparent interest as tenant in common of such

land for a consideration paid him at the time, as for instance for a loan of money, the *mortgagee having no notice of the character of the property in equity as copartnership property*, he is entitled to hold it under his mortgage. He may rely upon the legal effect of the conveyance to his mortgagor, and upon his apparent title upon record.    *    *    * * A mortgage made by a partner of his interest in partnership real estate, to one *who knows it to be such*, is not a mortgage of the partner's undivided interest in such real estate, but of his interest in the portion mortgaged after the payment of the firm debts upon a settlement of the partnership accounts." Boone on the Law of Mortgages, section 26, is to the same effect.

If a mortgagee takes a mortgage with knowledge of facts which make the property in equity assets of a firm, then he can not ask to stand in front of those who have a right to have it applied as partnership assets. He, however, holds as a purchaser, and if he had no notice that it was partnership real estate, then there is no prevailing equity in favor of the partnership or its creditors. It might properly be held, perhaps, that the continued use of the property by the partnership is notice of its equitable right in it; but in the case now presented, it does not appear that the mortgagees knew, when their mortgages were executed, that the firm of Campbell & Seeley was using the property, or even that such a firm existed.

This is not all, however. It is not averred in the pleadings that it was then in existence even. The appellant, Seeley (a defendant below), in his amended

answer, says: "After his purchase of an undivided half interest in the four acres of ground and appurtenances, known as the D. B. Campbell mill property, this defendant and D. B. Campbell conducted and run said mill in partnership, under the firm name of Campbell & Seeley, and bought timber, sawed it up into lumber, and conducted the general business of a saw mill." This is the extent of his averment upon this point. He says that the partnership was formed *after* the purchase of the half interest in the property. But whether immediately, or how soon after, is not stated. In view of the rule that the statement must be regarded most strongly against the pleader, we can not construe this as amounting to an averment that the partnership was formed prior to the execution of the mortgages, which were executed soon after the conveyance by Campbell to Seeley; and there is neither averment or any evidence showing that the property had been devoted to partnership use prior to the execution of the mortgages, or that the mortgagees so knew, or were even aware that such a firm as Campbell & Seeley existed. Neither the deed from Campbell to Seeley, or the mortgage to Mrs. Whitehead, gave such notice. The latter merely recited that the property was "owned by Campbell & Seeley."

The judgment giving the mortgagees priority as to the mill property is correct.

One other question remains to be considered. The mortgage to Mitchell also embraced a tract of land known as "Kopley Knob." In his petition, however, he did not describe it, or ask that his lien be enforced against it. The answer of Seeley, however, and which

was a cross-petition against Campbell, set up a mort-
gage lien of one thousand five hundred dollars on the
"Knob" in his favor, elder to that of Mitchell.  It sub-
sequently appeared, however, that it was settled.

It also averred that one Rodes had a mortgage lien
upon the "Knob," then in the form of a judgment;
and that "said Rodes has assigned and transferred said
lien, or will assign and transfer said lien judgment to
this defendant," and claimed that it was superior to the
mortgage liens of Mitchell and Mrs. Whitehead, and
asked its enforcement and the sale of the "Knob" to
pay it.  This pleading was filed on June 19, 1882.  Sub-
sequently the Mitchell lien was set up as to the "Knob,"
and its enforcement asked, subject, however, to the lien
of Seeley for the Rodes judgment.

He, however, in response to it, claimed the property
absolutely by reason of the following facts:

The Rodes judgment was rendered on February 12,
1878.  A supplemental judgment, directing the execu-
tion of the first one, was entered on October 29, 1880.
Seeley appears to have purchased it prior to the filing
of his answer on June 19, 1882, in this suit, but it was
not assigned to him until August 1, 1882.  Neither
Mitchell or the party to whom he has assigned his debt
were parties to it.  After Seeley had thus set up his lien
for it in this suit and asked a sale of the property to
pay it, and while it was pending, and on August 28,
1882, he had the "Knob" land sold under the Rodes
judgment; purchased it; had the sale confirmed, and a
deed made to himself.  He, therefore, now claims it
absolutely, and resists a sale of it in this action.

It is true that the Mitchell mortgage was executed

after the rendition of the Rodes judgment; and it is therefore said that there was a *lis pendens* when Mitchell obtained it. The Rodes judgment was, however, allowed to lie for nearly five years without any step being taken to enforce it; and when it was done, the owner of it was asserting it in another suit with another lien creditor as the superior lien, and asking in that suit that the property be sold to pay it. This he had voluntarily done, because when he set up the lien the other lien creditor was not asserting his lien as against this property. The question of priority of lien had been raised by Seeley himself, and was pending before the sale of the property under the Rodes judgment. It is true that the assignee of Mitchell did not become the owner of the Mitchell debt until after the purchase of the land by the appellant; but he stepped into the shoes of his assignor.

The parties had a right to believe that the question of lien would be settled in this suit. The appellant Seeley had asked this very thing. To say now that he is entitled in equity to hold the property as the owner by virtue of his purchase under the Rodes judgment would allow him to profit by his own conduct, which was at least misleading to the other party. The latter had a right to believe, from the conduct of the appellant, that he had abandoned the enforcement of the Rodes judgment, save in this action. The supplemental judgment in the Rodes case was entered prior to the assertion by Seeley of his lien in this suit; and the conduct of the latter in thus asserting it deprives him of the right to say that the other lien-holder acquired his claim while there was a *lis pendens*, and must be held as to such

other party to have been an abandonment ot the right to enforce the Rodes judgment save in this action, and by a further order of a court.

The lower court correctly held that the appellant as to Mitchell's assignee had a lien only upon "Kopley Knob," and properly ordered its sale to satisfy the liens, giving the appellant the priority.

Judgment affirmed.