## TAYLOR v. COMMONWEALTH.

Court of Appeals of Kentucky.
Dec. 6, 1951.

Rehearing Denied March 28, 1952.

982

Stoll Keenon & Park, Lexington, H. V. Forsyth, Ashland, Bullitt, Dawson & Tarrant, Louisville, Sands, Marks & Sands, Richmond, Va., for appellant.

J. A. Runyon, Pikeville, A. E. Funk, Atty. Gen., LeWright Browning, Ashland, Hobson & Scott, Pikeville, for appellee.

STANLEY, Commissioner.

In 1907 the Commonwealth of Kentucky filed its petition in equity in the Pike Circuit Court against numerous defendants, including George H. Taylor, of Norfolk, Virginia, seeking to forfeit their title to the land described in the petition (aggregating over 750,000 acres) upon the ground that the defendants had failed to list the property for taxation and to pay the taxes thereon in compliance with the provisions of Chapter 22 of the Acts of 1906, Kentucky Statutes, 1936 Edition, Sections 4076b to 4076k, inclusive, relating to the assessment of old land grants. On February 14, 1908, a judgment of forfeiture was entered, but the case was retained on the docket for further proceedings. Several of the defendants appealed, and the judgment was affirmed. Eastern Kentucky Coal Lands Corp. v. Commonwealth, 111 S.W. 362, 33 Ky. Law Rep. 857. The constitutionality of the Forfeiture Act of 1906 had been upheld in Eastern Kentucky Coal Lands Corp. v. Commonwealth, 127 Ky. 667, 106 S.W. 260, 108 S.W. 1138, and the Kentucky Union Co. v. Commonwealth, 128 Ky. 610, 108 S.W. 931, 110 S.W. 398, 33 Ky. Law Rep. 9, 587. The decisions were affirmed in Kentucky Union Co. v. Com. of Kentucky, 219 U.S. 140, 31 S.Ct. 171, 55 L.Ed. 137.

Section 4 of the Forfeiture Act gives the owner of any of the forfeited grants the right to redeem the land by paying 50 years' taxes after having established title sufficient to support an action of ejectment. Section 6 provides that all titles forfeited to and vested in the Commonwealth and not purchased back by the owners or claimants as provided in Section 4, shall be transferred to and vested in any person for so much thereof as such person has had the actual adverse possession for five years next preceding the judgment of forfeiture under the claim or color of title, and who shall have paid the taxes thereon. Section 7 provides that all title to land vested in the Commonwealth and not purchased back by the owner or claimant as provided in Section 4 and not vested in the occupant as provided in Section 6 shall be sold to the highest and best bidder for cash. After the payment of the costs of the action and the taxes, the remainder shall be paid over to the former owner or claimant or his personal representative or assigns.

The judgment of forfeiture entered on February 14, 1908, concluded as follows: "All other questions not herein specifically adjudged are reserved for further adjudication." No further steps were taken in the case until May 10, 1947, when George H. Taylor, a defendant in the 1907 suit, filed a motion in the circuit court asking for an order of sale of land described in the petition as Tract No. 21, known as the Haskell patent, as was prayed in the original petition of the Commonwealth. It was described as: "All that part that is situated in Pike County, Kentucky, West of the top of the ridge that divides the waters of Levisa Fork from the waters of Tug Fork of Sandy River, of that certain tract or parcel of land, containing 300,000 acres by survey bearing date the 28th day of November, 1795, granted by the Commonwealth of Virginia to Benjamin Haskell, by letters patent bearing date the 16th day of February, 1797, * * *".

The Commonwealth set forth a number of reasons why the motion should be overruled. The court overruled the motion on the ground that it was barred by the statute of limitations and by laches. Taylor then brought mandamus proceedings in this court against the judge of the Pike Circuit Court to require him to enter the order of sale, but mandamus was refused as not being the proper remedy. Taylor v. Stephenson, 309 Ky. 68, 215 S.W.2d 947. He has now appealed from the order overruling his motion.

In the forfeiture of lands in Leslie County, Kentucky Union Co. v. Commonwealth, 128 Ky. 610, 108 S.W. 931, 110 S.W. 398, 33 Ky. Law Rep. 9, 587, affirmed 219 U.S. 140, 31 S.Ct. 171, 55 L.Ed. 137, the judgment did not order a sale. A motion

similar to that made in the case at bar was overruled by the circuit court. In an original proceeding, this court directed the trial judge to enter the order for the sale of the entire body of land. Davidson v. Lewis, 159 Ky. 798, 169 S.W. 538. See for distinction in procedural rights or remedies, Taylor v. Stephenson, supra. Naturally, the appellant relies upon the Davidson case. The different states of fact distinguish it from the present one. There Davidson moved seasonably. The apparent purpose of not ordering a sale at the time the judgments in both cases were rendered was to await final determination of the constitutionality of the act. The opinion of the Supreme Court affirming our decision of constitutionality was delivered January 3, 1911. Making allowance for time necessary for the filing of the mandates here and in the Leslie Circuit Court and for further proceedings, Davidson moved without delay. He filed his action in this court in the summer of 1914. But Taylor waited until May, 1947, or thirty-nine years after the judgment of forfeiture in his case became final. Therein lies the difference. Upon that difference this case turns.

Though perhaps not necessary, it seems desirable in the interest of full disposition of the case to dispose of certain contentions of the Commonwealth.

■ It appears that at a special term of the Pike Circuit Court in 1911 the judge, on the call of the docket, wrote the word "off" beside the name of the case. Striking a cause from the docket does not dismiss it or result in loss of jurisdiction. It merely removes the case from the active docket, and leaves it subject to being reinstated. Hays v. Baker, 237 Ky. 265, 35 S.W.2d 296; Goff v. National Rubber & Leather Co., 249 Ky. 363, 60 S.W.2d 944. Further proper proceedings in the case may be seasonably taken.

■ We do not accede to the argument that the appellant, Taylor, may not be heard because he has no interest in the land forfeited and is but a volunteer seeking to have it sold. The Commonwealth made him a party defendant and described the interest he was claiming. He made a defense by special and general demurrers. It is inconsistent now for the Commonwealth to claim that he never had any interest or any right to have had his claim adjudicated.

■ The Commonwealth argues that appellant lost all rights by the repeal of the Forfeiture Statute. It is not necessary to decide if it was constitutionally repealed. We think the right of the appellant as a party to the suit, whatever it might have been, was vested by the judgment and could not be abrogated or extinguished by a repeal of the statute. KRS 446.110; Baldwin v. Commonwealth, 11 Bush 417, 74 Ky. 417; Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 6 Cir., 137 F.2d 871, 882; 50 Am.Jur., Statutes, Sec. 526.

It is conceded that nearly all of the Haskell patent tract had been appropriated and titles of various occupants perfected by possession. But the appellant says that ,"Lying in between these larger tracts of land were and still are numerous relatively small and irregular parcels, principally along the mountain ranges, which were not owned by any of the local people, being the so-called vacant parcels, title to which was forfeited to the Commonwealth" by the judgment. He charges that mining and oil development companies have appropriated and developed these parcels without hinderance from anyone because of the failure of the court to order a sale. Further, that there is no way in which the title may be recovered or taxes thereon collected except by a sale in accordance with the provisions of the Forfeiture Act. The Commonwealth, of course, concedes that the title of the *occupying* claimants was not affected by the forfeiture and seems also to agree that there were some parcels, title to which would have passed by the sale and the net proceeds have gone to the *unoccupying* claimants. Under this state of fact it would appear that Mr. Taylor should have shown that there was some unoccupied land unredeemed and have identified it. However, that very point was the justification offered by Judge Lewis in the proceeding in which this court required him to enter the order of sale in Davidson v. Lewis, supra. The statute was construed in that opinion as contemplating that the whole body of land

forfeited should be sold, the purchasers, and not the occupants, being required to show in actions to recover under their purchase that the land claimed by them was not of the excluded class. However, the opinion in the Kentucky Union case, 128 Ky. 610, 108 S.W. 931, 110 S.W. 398, stated that after final judgment of forfeiture it might be to the interest of the Commonwealth to sell only certain parts as prescribed by the court. See Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 6 Cir., 137 F.2d 871, op. cit. 887, a case of special interest involving the very judgment we have here. We need not go into the apparent conflict in construction. Whether here it should be the one or the other, the controlling consequence of delay by the appellant in moving for an order of sale would be the same.

■ The judgment in this suit, as provided by Sec. 5 of the Act, decreed that title to the land embraced is now "transferred to, and vested in, the Commonwealth". We are not now concerned with the right to relief of any *occupying* claimant. Other defendants, (such as was the appellant, Taylor), or those in privity with them could have obtained relief by asserting their claims before or during the term at which the judgment of forfeiture was entered and offering to purchase the land back by paying taxes, etc. Sec. 4. It was further provided that all title and claim to land not so purchased back by the owner or claimant or not vested in an occupant "shall be sold to the highest and best bidder for cash in hand." After payment of taxes, costs, etc., the balance was payable "to the former owner or claimant or his personal representative or assigns." Sec. 7. The appellant claims this provision as to sale is mandatory and that such sale should yet be had. Without such action, the title to the land, which was not recovered, remained vested in the Commonwealth.

The Commonwealth did not follow up the prayer of its petition that such unredeemed titles and claims be sold. It may have been that its representatives understood that there was nothing left to be sold or that what was left was of little value. It was probably because the primary objective of the statute and the proceeding

had been accomplished. Whatever the reason, the Commonwealth then had a judgment forfeiting the land and held title thereto. The appellant would shift all responsibility to the state for not selling the uncleared titles. He and the other claimants of his class had a right to have those titles sold and the proceeds distributed. It was to their greater interest that it should be done and it was incumbent upon them to seek affirmative relief if desired. The appellant now asserts that right which existed then and continued to exist for a reasonable time thereafter. Such a step was timely taken in the Leslie County case of Davidson v. Lewis, supra, 159 Ky. 798, 169 S.W. 538. Mr. Taylor's omission has given rise to the present situation.

■ The appellant, of course, had full knowledge of the facts and the law governing the suit. A party may abandon a particular proceeding to enforce a cause of action or legal right. Abandonment may be implied or presumed from his acts and conduct or omissions. "It is generally held that a long and unexplained delay raises a presumption of abandonment which may justify the court in refusing to allow further prosecution of the action even though there is no intention to abandon." This may be determined by the facts and circumstances of the particular case. 1 C.J.S., Actions, §§ 138, 139. This court has recognized that a party by his voluntary conduct may abandon the enforcement of a judgment in his favor and be deprived of a right to make a claim under it. Seeley v. Mitchell, 85 Ky. 508, 4 S.W. 190. Due diligence is demanded of a party in the prosecution or defense of an action. Childers v. Potter, 291 Ky. 478, 165 S.W.2d 3.

In White v. Horn, 224 Ill. 238, 79 N.E. 629, 630, 115 Am.St.Rep. 155, creditors of a decedent's estate sought to have an order of sale of his real property enforced more than 23 years after it had been entered. They offered as an excuse for the long delay that the lands were worth nothing in the market until recently when they had greatly advanced in value. The court held that the judgment of sale had given the creditors a lien but that it could be and was "lost by gross laches or unreasonable de-

lay". Following the analogies of the law, declared without legislation, and the policy of "repose and security of titles and estates against dormant claims" the judgment denying the execution of the order of sale was affirmed.

In Carr v. Cleveland, Tex.Civ.App., 86 S.W.2d 858, where a party had failed to question a judgment for 30 years, during which time it had stood on record as a muniment of title in a defendant from whom others had acquired rights to the land, it was held that the failure of the plaintiff to proceed seasonably operated to induce the belief that he had acquiesced in the same and that his silence and inaction had worked an abandonment of his rights.

█ █ The abandonment by the defendant, Taylor, of an unadjudicated or unconsummated claim of right, and his acquiescence in the failure of the Commonwealth to take further steps to have the land sold, created a new right in the Commonwealth. Cf. Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526. It is the right of repose. This is the essential basis of the doctrine of laches. As observed by Mr. Justice Brewer in Halstead v. Grinnan, 152 U.S. 412, 14 S.Ct. 641, 643, 38 L.Ed. 495: The defense of laches "prevents the breaking up of relations and situations long acquiesced in, and thus induces confidence in the stability of what is, and a willingness to improve property in possession; and at the same time it certainly works in furtherance of justice, for so strong is the desire of every man to have the full enjoyment of all that is his, when a party comes into court and asserts that he has been for many years the owner of certain rights, of whose existence he has had full knowledge, and yet has never attempted to enforce them, there is a strong persuasion that, if all the facts were known, it would be found his alleged rights either never existed or had long since ceased."

In that case the plaintiff sought the aid of a court of equity to set aside a survey alleged to have been inaccurate. Laches was held a good defense since it had stood unchallenged for over 25 years and all the facts alleged in the suit were known to the plaintiff for more than 20 years before the suit was brought.

Mr. Justice Harlan in Lansdale v. Smith, 106 U.S. 391, 1 S.Ct. 350, 27 L.Ed. 219, declared that in every case it is a question that appeals to the conscience of the court, and that since long acquiescence and laches by parties out of possession of property taken over by another are productive of much hardship and injustice to others, it will not be excused except by showing some actual hindrance or impediment caused by fraud or concealment of the party in possession. See cases of defective foreclosure of a mortgage, Martin v. Gray, 142 U.S. 236, 12 S.Ct. 186, 35 L.Ed. 997, and New Orleans National Banking Association v. Le Breton, 120 U.S. 765, 7 S.Ct. 772, 30 L.Ed. 821.

The rule of laches is discussed at some length in Barrowman Coal Corp. v. Kentland Coal & Coke Co., 302 Ky. 803, 196 S.W.2d 428, 429, 432. As therein stated: "Time is only one element in the doctrine of laches. In some cases it is the prime or controlling element, e. g., in the assertion of a long standing claim that has become stale through the passing of the years, with a loss of evidence or obscuration of the facts. In other cases, as in this one, the lapse of time may be brief, but the injurious consequences of the delay may be great."

█ The appellant contends that the rule of laches cannot apply because the state as the only adverse party has not been prejudiced by the delay; that purchasers at a sale under the judgment and the statute would now acquire, as they would have then, only such title and rights as the Commonwealth had, and that they alone may raise the question of laches. We cannot agree. We think to grant the motion would result in great prejudice and injustice to the Commonwealth.

In considering the matter of time and prejudice, a bit of background is helpful. The history and chaotic conditions of titles in eastern Kentucky and the evils sought to be cleared and overcome are interestingly described in the original case

of Eastern Kentucky Coal Lands Corp. v. Commonwealth, supra, 127 Ky. 667, 106 S.W. 260, 108 S.W. 1138. The objective of the legislation was to confirm titles of those who had fought the wilderness, built their homes and settled the land, and to get rid of the old land grants which were being held in terrorem over the occupants by persons who had never taken or undertaken actual possession and had paid no taxes. These non-occupants had a strangle hold on this vast area. The overlapping and conflicting titles had stifled and all but prohibited the development of the natural resources. All this was a matter of grave concern to the Commonwealth. There had been studied efforts since the separation from the mother state of Virginia to clear up the situation. These appear in the several constitutions of the state and in legislative acts which were held unconstitutional. See Warfield Natural Gas Co. v. Ward, 286 Ky. 73, 149 S.W.2d 705. Finally, through the exercise of its sovereign power of taxation, the state succeeded by this constitutional legislation in bringing order out of chaos.

Since the judgment, cities and towns have been built, the country has been populated, a trunk line railroad has been constructed, millions of dollars have been spent in the development of coal and other natural resources of this vast area. The 300,000 acres lying between Tug River and Levisa Fork, in which the appellant now claims an interest and seeks to have sold, is in the heart of it. Titles have changed hands upon the faith of this judgment of forfeiture. Title examinations have disclosed that there was no sale of the forfeited titles and it could well be assumed as a consequence that there were no outstanding claims based on the Virginia grants. Purchasers were entitled to assume that the forfeited titles had vested under Sec. 6 of the Act and that no cloud on the titles would thereafter be created by a sale of the forfeited lands.

The appellant's belated motion burrows deep into the foundation upon which all the titles rest. If sustained, it would put a question mark upon every title. Valuable equities of innocent parties intervened while the appellant remained silent. It may be that there are some isolated parcels that were not recovered from the forfeiture by the claimants and were the subject of sale. But they would have to be identified. Further procedure would upset many titles. Obscuration of evidence would probably be the rule rather than the exception. And there were claimants of an interest in the Haskell patent other than the appellant. To open up the case now, after more than 40 years, would be to open up a gigantic Pandora's box. That which the Commonwealth, acting as sovereign of all the people, achieved through the travail of years of legislation and litigation, namely, clearing the confusion of titles, would, in a large measure, be lost. The Commonwealth has the same sovereign power now to represent the people to conserve that accomplishment. The policy of the state is to stabilize titles. Upon that rests security and prosperity, a matter of primary concern. How then can it be said that the element of prejudice to the Commonwealth is lacking so that the rule of laches should not apply and the presumption of an abandonment and acquiescence by the appellant should not prevail?

In Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., supra, 6 Cir., 137 F.2d 871, 879, the appellant, claiming to own all the land embraced in this very Haskell grant of Virginia, sued the appellee to recover the land and for judgment for $70,466,900 for the value of gas taken therefrom. It sought to have the court hold that the judgment we have here was void. The court held it to be valid in every particular. In the course of the opinion, Judge Elwood Hamilton, an eminent Kentucky jurist, speaking for the court, said: "After a lapse of thirty-two years, appellant asks the court to declare the judgment of forfeiture void and restore to it the land that has long since passed to others under the forfeiture decree * * *. It would be trifling with justice now to take the land away from those who acquired title to it through the decree of forfeiture and give it to appellant freed from the Commonwealth's claim

against appellant and its predecessor in title for thirty-two years' taxes on such an issue."

Our conclusion of the whole matter is that the failure of the appellant, George H. Taylor, to assert within a reasonable time his claim of right to have the unredeemed portions of the land sold and further proceedings taken under the judgment of forfeiture entered February 4, 1908, estops him from doing so now. The trial court, therefore, properly overruled the motion.

The judgment is affirmed.

COMBS, J., not sitting.