THOMAS et al. v. UTTERBACK et al.

Court of Appeals of Kentucky.

March 5, 1954.

As Modified on Denial of Rehearing
June 25, 1954.

Mooney & Turley, Lexington, for appellants.

F. C. Bryan, Mount Sterling, for appellees.

**WADDILL, Commissioner.**

Appellants are numerous children, grandchildren, and great-grandchildren of Verlinche Utterback, who died testate in Bourbon County in 1931. Appellee, Benjamin S. Utterback, is a son of Verlinche Utterback who brought a suit in equity in 1953 to have his mother's will declared invalid as violating the rule against perpetuities, and to have cancelled a deed from his father to him under which he took a life estate in certain property, and to have a new deed granting him a fee in the property issued by the Court. Appellee won a judgment, from which this appeal is taken, awarding him the relief sought.

The will of Verlinche Utterback provided that each of her four children was to have a one-fourth interest in 150 acres of land for life, and at his or her death the same was to pass to any child or children he or she might leave surviving, for and

during the life or lives of said children (testatrix's grandchildren) with remainder in fee simple to vest in the issue of her great-grandchildren per stirpes. Testatrix's will also contained a provision that any one of her children might sell his interest provided the proceeds of the sale were reinvested in other land and the title thereto taken in accordance with the terms of the will.

About eight months after the death of Verlinche Utterback her four children conveyed their entire interest in the 150 acres to their father, Hezekiah, for $9,000. On the same day in 1931 for valuable consideration, Hezekiah Utterback made a deed to each of his children. These four conveyances included the 150 acres of land devised by Verlinche Utterback and in addition, all of the land owned by Hezekiah. Appellee's deed, after reserving a life estate to Hezekiah, conveyed to appellee a life estate in 157 acres of land for $2,250, with remainder to appellee's surviving children, or in the absence of surviving children, to appellee's heirs.

Appellee admitted that there was some discussion among the persons concerned back in 1931 respecting the possible invalidity of his mother's will, but that they decided not to contest it. Appellee was 45 years of age in 1931 and was fully informed of the terms of his mother's will and of the agreement into which he entered with his father.

It is appellee's contention that he is seeking a declaration of rights concerning the construction of his mother's will; that the deed from his father created the same type of estate in the 150 acres as did the will; and that the deed should be reformed to comply with the will as construed. One of the principle difficulties with appellee's contention is that the will did not create a fee in the testatrix' children, and if the deed conformed to the will, appellee does not have a fee.

■■ The only ground on which appellee could be held to have title in fee would be in the event his mother's will was wholly void and she therefore died intestate. How-ever, it appears that the only void provision of his mother's will (because violating the rule against perpetuities) was that her great-grandchildren should acquire the remainder in fee. The preceding life estates (one of which was devised to appellee) were valid. See Chenoweth v. Bullitt, 224 Ky. 698, 6 S.W.2d 1061; Ford v. Yost, 300 Ky. 764, 190 S.W.2d 21. Therefore, the deed to appellee from his father correctly devised him only a life estate in exact conformity to the valid provisions of his mother's will, and neither under the will nor the deed was he entitled to a fee.

■ Even if we had some doubts as to the proper construction of the will as vesting in appellee only a life estate, it seems obvious that by his acceptance of the deed he acquiesced in a construction of the will which at this late date we are not inclined to permit him to repudiate. He waited over 22 years to attempt this reformation of a deed which was clear on its face, and the doctrine of laches applies.

In Taylor v. Commonwealth, Ky., 246 S.W.2d 981, 986, we quoted with approval the following language of Mr. Justice Brewer from Halstead v. Grinnan, 152 U. S. 412, 14 S.Ct. 641, 643, 38 L.Ed. 495:

(The defense of laches) " * * * prevents the breaking up of relations and situations long acquiesced in, and thus induces confidence in the stability of what is, and a willingness to improve property in possession; and at the same time it certainly works in furtherance of justice, for so strong is the desire of every man to have the full enjoyment of all that is his, when a party comes into court and asserts that he has been for many years the owner of certain rights, of whose existence he has had full knowledge, and yet has never attempted to enforce them, there is a strong persuasion that, if all the facts were known, it would be found his alleged rights either never existed or had long since ceased."

■ It is true, as appellee asserts, that mere delay alone without injury to anyone

is not enough to uphold the plea of laches. But, in this case, appellee has acquiesced for 22 years in an agreement, while some of the parties affected by the agreement have died, and the rights of the heirs of these people will be prejudiced if appellee is allowed to repudiate what now appears to him to have been a bad bargain.

We have no doubt that numerous business ventures have been entered into in reliance upon the unquestioned status of this property by a large number of persons and estates have vested in some of them under the provisions of these deeds. Parties to this action and others that could be affected have a right to rely upon the validity of the deeds which were executed in 1931.

We are not deciding whether the agreement was binding or voidable or void in its inception, but that it is too late to question it now. Appellee went into this agreement with his eyes open, and the courts were available to him many years ago to assert whatever rights he may have had.

Judgment reversed with directions to dismiss appellee's petition.