## HALSTEAD v. GRINNAN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF WEST VIRGINIA.

No. 128. Argued December 4, 5, 1893. — Decided March 19, 1894.

The facts admitted or proved in this case show that the plaintiff was guilty of laches in failing to file his bills for so long a time, and it is held that they were properly dismissed by the court below.

Laches is an equitable defence, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to assert them, where he has had for a considerable period knowledge of their existence, or might have acquainted himself with them, by the use of reasonable diligence.

The length of time during which a party neglects the assertion of his rights which must pass in order to show laches, varies with the peculiar circumstances of each case, and is not subject to an arbitrary rule.

On January 24, 1885, plaintiff filed in the District Court of the United States for the District of West Virginia his bill of complaint against A. G. Grinnan, the Forest Hill Mining and Manufacturing Company, Robert Soutter, trustee; William Wyant, and the unknown heirs of William K. Smith, deceased. At that time there was no Circuit Court in the district, the District Court having the powers of a Circuit Court, but before the final disposition of this case a Circuit Court was established by the act of Congress of February 6, 1889, c. 113, 25 Stat. 655, and to it the case was transferred. On November 30, 1887, the plaintiff, by leave of court, filed an amended and supplemental bill. Intermediate those dates, and on May 4, 1887, there was filed in that court the records of two cases transferred from the State Circuit Court of Greenbrier County, entitled, respectively, "*A. G. Grinnan* v. *S. C. Long et al.*," and "*F. B. Chewning* v. *J. F. Cowan et al.*" The plaintiff Halstead had been made party defendant in those cases, and notified by publication, and, after decrees by default against him, he appeared in each case by petition, praying for an opening of the decree and a rehearing, and, while those appli-

cations were pending, removed the case as above stated to the United States court. To the original and supplemental bills in the case commenced in the District Court, Grinnan and Wyant duly answered. Proofs were taken, and the three cases being heard together, on May 26, 1888, a final decree was entered as follows :

| | | |
|---|---|---|
| " John Halstead<br>*v.*<br>Wm. Wyant and Others. } In Equity. | } Heard together. |
| A. G. Grinnan<br>*v.*<br>S. C. Long and Others. } In Equity. | |
| F. B. Chewning<br>*v.*<br>J. F. Cowan and Others. } In Equity. | |

"These causes this day came on to be heard together and were argued by counsel; whereupon, upon consideration hereof, it is adjudged, ordered, and decreed that the bill and amended and supplemental bill in the first above-mentioned cause be, and the same are hereby, dismissed, and that the defendants therein recover of the complainant, John Halstead, their costs about their defence in that behalf expended.

"And it is further adjudged, ordered, and decreed that the petition for rehearing filed by said Halstead in said second and third suits above mentioned and the rule awarded said Halstead in said suits against the defendant, William Wyant, be each of them, and the same are, hereby dismissed; and it is further adjudged, ordered, and decreed that the defendants in said petition and said rule respectively recover their costs against said Halstead; but in taxing the costs recovered in this decree but one attorney's fee shall be allowed."

A petition for rehearing having been denied, an appeal was taken to this court.

The burden of this controversy rests in these facts : On June 15, 1859, A. G. Grinnan, W. K. Smith and A. G. Grinnan as

trustee, conveyed to the Forest Hill Mining and Manufacturing Company (hereinafter called the Forest Hill Company) a tract of land in the county of Fayette, in the then State of Virginia, (now West Virginia,) containing 2000 acres, more or less, and also another tract and a right of way described in the deed, as follows:

"Also a certain piece or parcel of a certain tract of land known as the Huddleston tract, to be surveyed off the western side of said tract by a line running from the northerly to the southerly side of said tract, to be bounded on the south by the tract hereinabove conveyed, and on the north by the Great Kanawha River, and containing one hundred acres, more or less. Also the perpetual right of way to the said party of the second part, their successors and assigns, through a tract of land known as the 'Elk Ridge' tract, lying between the tract of 2000 acres, hereinabove conveyed, and Armstrong's Creek, with the privilege of the said party of the second part of entering thereupon by their agents and servants, and constructing upon and over the same such roads or railroads as they may deem necessary for convenient access to and from the lands hereby conveyed."

This Huddleston tract was conveyed by Huddleston to Grinnan by metes and bounds, and in the deed was estimated to contain 200 acres, though in fact it contained nearer 250 acres. It was bounded on the north by the Kanawha River, its west line straight but its east line quite a zigzag, with considerable frontage on the Kanawha, but narrowing towards the southern end, and for some little distance towards that end bordering on the tract of 2000 acres previously described in the deed to the Forest Hill Company.

On the same day of the conveyance to it the Forest Hill Company placed a trust deed upon the property to secure the payment of sixteen promissory notes and eighty bonds. On June 6, 1864, the trustee, in execution of the trust and in consideration of the sum of $3500, conveyed the property to plaintiff. In this trustee's deed the description of the Huddleston tract and the right of way is as follows:

"Also a lot, piece, or parcel of land (containing 100 acres,

more or less, provided in said deed to be surveyed off the west side of the tract of land known as the Huddleston tract, as the same was ascertained and bounded by the survey made subsequently to the execution of the said deed and in pursuance thereof) adjoining the above ; also the right of way through and across the Elk Ridge tract, also adjoining the above, which said lands and right of way are more fully described in a deed from William K. Smith and wife and Andrew G. Grinnan and wife and the said Andrew G. Grinnan, trustee, to the aforesaid Forest Hill Mining and Manufacturing Company, bearing the same date as the deed or conveyance in trust first above mentioned."

The survey, thus referred to, was made in the year 1859 by Thomas S. Robson, the county surveyor of Fayette County. By this survey a tract of 105 acres was set off to the Forest Hill Company, on the west side of the Huddleston tract, but so surveyed that no part of the land given to the company touched the 2000-acre tract heretofore referred to.   The contention of the plaintiff was that such survey was inaccurate in that the part set off to the Forest Hill Company did not at any point touch the 2000-acre tract, and, therefore, did not comply with the terms of the deed; and the prayer was that he be decreed the owner of an undivided one-half interest in the Huddleston tract, and that a partition and new survey be made setting off to him the one-half, so as to connect with the aforesaid tract of 2000 acres.

The defendant Wyant claimed to have purchased the balance of the Huddleston tract, not set apart to the Forest Hill Company, at a judicial sale, in April, 1883, at the price of $60.50 per acre, amounting to over $9000 ; that he bought relying upon a map shown at the sale of the commissioner which conformed to the survey made by Robson, and in ignorance of any claim of the plaintiff ; that he entered into possession and had expended about $7000 in building houses and opening mines.   This commissioner's sale was by virtue of a decree rendered in the cases heretofore referred to as transferred from the State court and consolidated with the suit in the District Court, and in which cases prior to the decree plaintiff had been served by publication.

*Mr. A. Burlew* for appellant.

*Mr. W. Mollahan* for A. G. Grinnan, appellee.

*Mr. J. F. Brown* for William Wyant, appellee.

*Mr. Eppa Hunton* filed a brief for F. B. Chewning's estate and for A. H. Smith, appellees. ·

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The plaintiff, by this suit, invoked the aid of a court of equity to set aside a survey which had stood unchallenged for over twenty-five years. Such a long delay suggests laches, and a careful examination of the testimony satisfies us that the Circuit Court did not err in sustaining this defence. The defence itself is one which, wisely administered, is of great public utility, in that it prevents the breaking up of relations and situations long acquiesced in, and thus induces confidence in the stability of what is, and a willingness to improve property in possession ; and at the same time it certainly works in furtherance of justice, for so strong is the desire of every man to have the full enjoyment of all that is his, that, when a party comes into court and asserts that he has been for many years the owner of certain rights, of whose existence he has had full knowledge and yet has never attempted to enforce them, there is a strong persuasion that, if all the facts were known, it would be found that his alleged rights either never existed, or had long since ceased. We have had before us lately several cases in which this defence has been presented, and in which the rules determining it have been fully stated and its value clearly demonstrated. *Hammond* v. *Hopkins,* 143 U. S. 224, and cases cited in the opinion ; *Felix* v. *Patrick,* 145 U. S. 317 ; *Foster* v. *Mansfield, Coldwater &c. Railroad,* 146 U. S. 88 ; *Johnston* v. *Standard Mining Co.,* 148 U. S. 360. The length of time during which the party neglects the assertion of his rights, which must pass in order to show

laches, varies with the peculiar circumstances of each case, and is not, like the matter of limitations, subject to an arbitrary rule. It is an equitable defence, controlled by equitable considerations, and the lapse of time must be so. great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to now assert them. There must, of course, have been knowledge on the part of the plaintiff of the existence of the rights, for there can be no laches in failing to assert rights of which a party is wholly ignorant, and whose existence he had no reason to apprehend. And yet, as said by Mr. Justice Brown, speaking for the court in *Foster.* v. *Mansfield, Coldwater &c. Railroad,* 146 U. S. 88, 99, " The defence of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, and hard to disprove ; and hence the tendency of courts in recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts."

In this case there is no question as to plaintiff's knowledge. In the deeds from Grinnan and Smith to the Forest Hill Company, and from that company to the trustee, the description is of a piece, or parcel, of a certain tract " to be surveyed off the western side of said tract by a line running from the northerly to the southerly side of said tract." And in the deed from the trustee to plaintiff, which was made on June 6, 1864, the description is of a lot, piece, or parcel of land containing 100 acres, more or less, " as the same was ascertained and bounded by the survey made subsequently to the execution of the said deed, and in pursuance thereof," so that in the deed made to the corporation, of which he was a stockholder, twenty-five years before the commencement of this suit, was a provision for a survey, and in the deed to himself, made more than twenty years before this suit, was a declaration that the survey called for by the previous deed had been made. When, therefore, he took title, he took it with notice that a survey had been made, and would not now be heard to

say that he had no knowledge of that fact. Further, the survey which was made by the county surveyor, Robson, was made in 1859. In 1861 the same surveyor made a plat showing the Forest Hill tract of 2000 acres, and the Huddleston tract, as surveyed, with the adjoining lands, which plat, or so much of it, at least, as is material, is inserted on the opposite page.

A mere glance at this plat shows that the Huddleston tract is so surveyed that the part set off to the Forest Hill Company at no point touches the 2000-acre tract, but is separated therefrom by a narrow strip — a part of the land reserved to Grinnan and Smith. Now, in reference to this map, the plaintiff alleges, in his amended and supplemental complaint, as follows:

"The map filed with the deposition of T. S. Robson, marked 'T. S. R. No. 2,' was made from a survey made by said Robson in 1861, and your orator believes that it shows correctly the location of the Forest Hill tract of 2000 acres and the Huddleston tract and the division made by him in 1859 and their relations to each other. Your orator avers that he saw this map for the first time in about 1867. It will be seen by this map, which is asked to be read and considered as a part of this bill, that the division of the Huddleston tract made by T. S. Robson in 1859 is so made that the part retained by Grinnan intercepts that part laid off to the Forest Hill Company from the Forest Hill tract of 2000 acres, so that they do not join each other."

In other words, he admits that eighteen years before he brings this suit he saw the map which discloses the survey, and it is apparent at a glance, as he himself alleges, that the part set off to the Forest Hill Company does not at any point touch the 2000-acre tract.

But beyond this direct admission there is testimony tending to show that both he and his grantor had knowledge at a much earlier date. The Forest Hill Company was organized in the year 1859. The plaintiff was a stockholder in the company. Dr. Hale was its president, and, after the deed to plaintiff and up to the time of this suit, he continued to reside, as the agent of the plaintiff, on this 105 acres, set off to the

Forest Hill Company.   The northern part of this Huddleston tract along the Kanawha River was comparatively level, and it is evident that the Forest Hill Company bought with a view of putting up buildings on this level ground near the river, and with the understanding that the grantors should immediately cause the survey to be made.   The survey was in fact made that same fall, and the company entered into possession of the land surveyed off to it, and erected buildings thereon, in the course of its improvements placing some fences along the division line between the two parts of the tract as surveyed by the county surveyor.   This is the testimony of the president of the company in respect to the matter:

"Ans.  There were six or seven dwelling-houses, — small cottage houses, — a coal mine and oil factory, and all the necessary machinery and plant, and my own house, some twelve or fifteen acres enclosed in a fence and cultivated.  There was a blacksmith shop, cooper's shop, barn, and stable.  That is all I think of.

"25th Q.  Were not said improvements confined exclusively to the western side of the division line drawn by Robson as shown by Exhibit 'B' with this deposition?

"Ans.  Yes.

"26th Q.  Were not a part of the fences around the enclosures built on and along said division line?

"Ans.  I believe they were part of the way."

It is probably true, as some of the officers say, that it was specially interested at the time only in the level ground along the river, and paid no attention to the lines of the survey towards the southern end which runs up into steep mountainous land, and yet, according to the testimony of the engineer, the improvements made by the company extended back between 1500 and 1800 feet from the river.  Giving full credence, however, to all this testimony, it remains undisputed that the company knew that the land had been surveyed; knew where the division line ran on the northern part of the tract; accepted that line as correct, and made improvements with reference to it, and simply did not consider the southern end of the tract as of sufficient importance to examine and see

where the lines were run. If the company was in fact ignorant of the location of the division line at the southern end of the tract, it was an ignorance resulting from its own indifference to the matter, and although it knew that the line had been run.

Still further, we find this in the testimony of the president, Dr. Hall:

"It was a part of their agreement with the Forest Hill Company that the survey should be made and that the lines should be run properly. I was in New York when Grinnan had the lines run by Robson, and when I came back in 1859 I learned for the first time that the lines had been run and the division had been made. This survey was made and lines run in the fall of 1859. . . . The whole tract of 2000 acres was surveyed by Robson some time about February, early in 1861, and after that survey was made we had a plat given us not only showing the 2000 acres, but also the 100 acres of frontage. It was then for the first time that we knew or indeed had any suspicion that the Huddleston frontage did not unite with the Forest Hill tract. This occurred just at the beginning of the war, in 1861."

There is more testimony to like effect coming from other officers of the company. The plaintiff also, in his deposition, testified as follows: "When the Forest Hill Company took possession, in 1859, I was told that Robson ran the lines for the purpose of laying off the westerly half of the Huddleston tract so that they would know where to locate their buildings. I don't know of anything more being done until Robson surveyed the entire tract, as is shown by his map, dated 1861." In the amended bill it is alleged "that said company had no occasion to examine the lines run by T. S. Robson in 1859, except to see that they were properly run for a short distance back from the Kanawha River, about 1000 feet, where it was interested, and about to locate its buildings for the manufacture of coal oil and erect the necessary dwelling-houses for its officers and employés, and where it did so erect them. It took no part in running the division lines in 1859 except to see that they were properly run through the bottom land on

the Kanawha River, for the reasons above stated, and did not accompany said surveyor any further on his survey, but said company supposed, as a matter of course, until the mistake was discovered by it, that A. G. Grinnan had had the Huddleston tract divided according to the requirements of his deed to and agreement with said company."

It also appears from his own testimony that plaintiff's attention was called to the fact that the two tracts did not join, that he was urged to buy the intervening land but declined on account of the price, $30 an acre, and also because he supposed his deed gave him a right of way through the Huddleston tract to the Kanawha River as through the Elk Ridge tract to Armstrong Creek. We quote from his deposition as follows:

"For several years A. G. Grinnan had been urging me to buy his adjoining tract, and I told him I had already too much unproductive property on hand, but in the year 1880 I wrote him to this effect: That I would like to make the connection between the front and back land more complete, so that it would show to better advantage on the map, and that I would give him one hundred dollars for so much of the land as he owned running back from about where the Wilson line crosses the tract; that it was part of the frontage intended to connect the two tracts, and had not the Forest Hill Company been obliged to suspend their operations on account of the war, there is no doubt but they would have claimed it as their right. I had somehow gotten the impression from seeing Robson's map that I could only claim the right of way, because the survey was not corrected whilst the company held possession, and that impression was not removed from my mind until I hunted up the Forest Hill Company's deed after A. G. Grinnan had sold to Wyant what did not belong to him without giving me any notice, as any fair-minded man would have done, knowing it would depreciate the value of my property many thousands of dollars. An examination of the deed showed, to my surprise, that the right of way did not apply to the front tract, but that the deed called for a connection of the two tracts."

But it is unnecessary to multiply these quotations from and

references to the testimony and pleadings. It will be difficult to find a clearer case of ample and long-continued knowledge of the exact situation; and if ever the knowledge of a mistake created a duty of taking some action to correct it, it surely did in the present instance.

We have thus far considered this case on the assumption that the survey made by Robson in 1859 was erroneous, and failed to give to the Forest Hill Company that which it claimed and was entitled to, yet there is testimony casting doubt at least upon this matter. That of the surveyor is that both the grantor and the grantee were represented at the time of the survey, and that it was made in accordance with their instructions, those instructions being to give an equal frontage on the river; that the deed to the Forest Hill Company was not produced, nor his attention called to the particular language of the description in that deed, nor anything said with reference to forming a connection with the 2000-acre tract.

Further, while the deed to the Forest Hill Company requires that this tract be surveyed off the western side of the Huddleston tract " by a line running from northerly to southerly side of said tract, to be bounded on the south by the tract hereinabove conveyed, and on the north by the Great Kanawha River," it is apparent from the plat that the 2000-acre tract referred to does not join the Huddleston tract on its south line, but only along the irregular east line. Now, if one call in the deed is explicitly followed, and the partition line run from the north to the straight line on the south, the land to the west of that will not connect with the 2000-acre tract, unless, indeed, the part reserved to Smith and Grinnan is separated into two parcels, the one south and the other north of the place of such connection. Apparently the exact situation of these two tracts was not at the time of the deed accurately known, and it was supposed that the 2000-acre tract ran along the whole southerly side of the Huddleston tract, and so it appears on some of the maps which were known to the parties at the time of the conveyance; and it was in view of such supposed location that this description was intro-

duced. One call, as we see, was explicitly followed in the survey, that of a line from the northerly to the southerly side of the tract. The amount to be set off was exceeded, 105 acres being surveyed off to the Forest Hill Company, and if that part was not bounded on the south by the 2000-acre tract, it was because on the south the 2000-acre tract did not join the Huddleston tract.

Stress is now laid upon the supposed importance of having access to the 2000-acre tract from the Kanawha River, and the claim is that such access was one of the main inducements to the purchase of this 100 acres, but so far as can be judged from the testimony, the steep, mountainous character of the land at the southern end of the Huddleston tract would interfere greatly with easy access from the Kanawha River, and the bringing of coal or other products of this 2000-acre tract to the water was apparently provided for by a right of way through the Elk Ridge tract to Armstrong Creek. In addition, the conduct of the parties at the time indicates that the main thought in the purchase of this 100 acres was of the level ground near the Kanawha River, and the desire of the company was to get as large a portion of that as possible, ignoring wholly the survey in the southern part of the tract. It is, therefore, to say the least, a doubtful question whether there was any mistake in the survey as made, and also whether the surveyor did not, in obeying the immediate directions of the respective parties, make a survey which conformed as nearly as was practicable to the calls in the deed. It is unnecessary, however, to lay stress upon this matter, and we only notice it to show that there were likely other reasons, besides those given by the plaintiff, why no challenge of the survey was made until this late day.

It only remains to notice the fact that Wyant purchased in 1883, at a judicial sale, the balance of the Huddleston tract; that at such judicial sale, conducted by a commissioner duly appointed by the court, a plat and description corresponding to the survey made by Robson in 1859 were presented as the basis of the sale, and that, relying upon that survey and description, Wyant made his purchase and paid his money, in

ignorance of any claim of plaintiff, or of any question as to the correctness of the survey; that he entered into possession and expended several thousand dollars in improvements before any challenge of his rights was made by plaintiff. Under those circumstances injustice would be done to him to disturb the survey and his possession of the property. As this situation of affairs was brought about through the negligence of the plaintiff, the court rightfully held him guilty of laches, and properly dismissed his bills. The decree is

*Affirmed.*

Mr. Justice White, not having been a member of the court when this case was argued, took no part in its decision.