SOMERSET RAILWAY, in equity,

*vs.*

LEWIS PIERCE, and others.

Cumberland.    Opinion June 1, 1895.

*Equity. Railroad. Mortgage. Foreclosure. R. S., 1883, c. 51;*
*R. S., 1871, c. 51, §§ 49-53, 55, 56; Stat. 1876, c. 122;*
*Stat. 1878, c. 53; Stat. 1883, c. 166.*

July 1, 1871, the Somerset Railroad Company made a mortgage of its road and franchise to trustees to secure the payment of its bonds. The condition of this mortgage having been broken, and so continued for more than three years, the mortgage bond-holders in 1883, organized a new corporation,

under the statute, by the name of the Somerset Railway. This corporation, the complainant, took possession of the mortgaged property on the first day of September, 1883, and have ever since retained it, and operated the road. On the eighth day of July, 1884, complainant purchased, at execution sale, the equity of redemption from the mortgage, from which sale no redemption has been had. *Held;* that full title has thereby been acquired by the Somerset Railway; and that, under the statute, the complainant represents all the mortgage bond-holders, and its title to and possession of the mortgaged property enure to their benefit.

*Also;* that each mortgage bond-holder thenceforward became a shareholder in the property covered by the mortgage, in the proportion that his bonds bore to the whole issue secured by the mortgage, and the bonds themselves are paid to the extent of the value of the mortgaged property, full title to which passed to the Somerset Railway.

A large part of the bond-holders have exchanged their bonds for stock in the Somerset Railway, par for par, and are now stockholders; those who have not so exchanged, remain share-holders, and are entitled to receive from the earnings of the road, the same pro rata dividends as the stockholders,— if they decline to exchange their bonds for stock,—but the possession and operation of the railroad will continue in the Somerset Railway.

*Held;* that trustees under the mortgage should release and convey whatever legal title remains in them to the Somerset Railway on payment of any sums that may be due them for services or disbursements, and be perpetually enjoined from the further prosecution of their pending suits, and from interfering in any way with the title, possession or use, by the Somerset Railway, of any and all the property described in the mortgage of July 1, 1871, except so far as it may be necessary for them by suitable legal process, to enforce any lien, if any, which they may have upon the property, for the payment of such sums as may be found due them as such trustees.

See *Inhabitants of Anson, Petitioners,* 85 Maine, 79.

ON REPORT.

Bill in equity, heard on bill, answers and proofs.

The case is stated in the opinion.

*Edmund F. and Appleton Webb; J. W. Symonds, D. W. Snow and C. S. Cook; J. H. and J. H. Drummond, Jr.,* for plaintiff.

*D. D. Stewart; H. M. Heath and O. A. Tuell; F. M. Drew; L. Pierce; N. and H. B. Cleaves; Everett R. Drummond,* for defendants.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WISWELL, STROUT, JJ.

STROUT, J. On the first day of July, 1871, the Somerset Railroad Company, having a charter for a railroad from a point near Carritunk Falls, in Solon, in the county of Somerset, to the town of Waterville, in the county of Kennebec, and being on that day possessed of franchises, and real and personal estate, for the purpose of building, equipping and operating such railroad, made a mortgage to Lewis Pierce, Daniel Holland and Stephen D. Lindsey, of the railroad from Waterville to its terminus in Solon, in the county of Somerset, together with the franchise of the company, and all its real estate, and all its personal property of every nature used in connection with its railroad, then possessed or to be thereafter acquired, in trust to secure the payment of the bonds of said company to an amount not exceeding five hundred thousand dollars, payable in twenty years from the date of the mortgage, with interest at the rate of seven per cent per annum, according to the coupons annexed to the bonds. Lindsey and Holland, two of the trustees, having deceased, Herbert M. Heath and Franklin M. Drew, were duly appointed trustees to fill the vacancies; and they, together with Lewis Pierce, are now the trustees under said mortgage. The Somerset Railroad Company issued and sold bonds secured by the mortgage to the amount of four hundred and fifty thousand dollars only. The company subsequently defaulted on the interest upon the bonds, and for more than three years prior to July 11, 1883, the company had failed to pay the interest on the mortgage bonds, and thereby had made a breach of the condition of the mortgage, though the principal of the bonds was not then due. The trustees under the mortgage never entered into possession of the mortgaged property, nor took any measures to secure a foreclosure of the mortgage; but the Somerset Railroad Company remained in possession of all the property, until the formation of a new corporation, under the name of the Somerset Railway. On the eleventh day of July, 1883, the holders of the mortgage bonds, to an amount largely exceeding one-half of the same, elected in writing to form a new corporation, and on the fifteenth day of August, 1883, did form a new corporation, under the name of the Somerset Railway,

as provided by chapter 51 of the Revised Statutes and acts additional thereto and amendatory thereof, and made the capital stock of the new corporation $736,648.76, which was made up as follows : $450,000, amount of outstanding bonds secured by the mortgage as principal ; and $286,648.76, amount of interest upon the bonds due August 15, 1883, and then unpaid.

On the 13th day of July, 1883, the stockholders of the Somerset Railroad Company, at its annual meeting, voted that the mortgage bond-holders organize a new corporation, under the statute, and take possession of the road at such date as their organization should entitle them to do ; and the stockholders also voted, at the same meeting, to surrender possession of the Somerset Railroad Company to the new corporation.   In pursuance of the organization of the new corporation, and by the consent of the Somerset Railroad Company as indicated by the votes of its stockholders, the Somerset Railway, on the first day of September, 1883, took possession of the railroad and all other property included in the mortgage, and have ever since held possession of the same and operated the road.   The capital stock of the Somerset Railway, being the amount of the unpaid bonds and coupons at their face value at the date of the organization of the new corporation, August 15, 1883, was divided into shares of one hundred dollars each, which shares were offered to the mortgage bond-holders at the rate of one share of stock for each one hundred dollars of bonds or that amount of coupons due August 15, 1883.   Bonds and coupons to amount of $552,-200 have been exchanged for stock in the new corporation, which has been issued, leaving outstanding and unexchanged $110,600 of mortgage bonds, and the coupons thereon.

A decree of strict foreclosure of this mortgage was entered by this court on the first day of April, 1887.   On the eighth day of July, 1884, all the right in equity of the Somerset Railroad Company to redeem the mortgage was sold on execution, and purchased by the Somerset Railway, from which sale no redemption has been had.

The trustees under the mortgage have brought suits to recover possession of all the property included in it, and mesne profits

against various officers and servants of the Somerset Railway, which are now pending.

The bill prays to have the title and possession of the Somerset Railway to the property described in the mortgage declared valid, and the mortgage of July 1, 1871, declared void, and the holders of outstanding bonds and coupons ordered to surrender the same in exchange for stock in the Somerset Railway, and that the plaintiffs in the suits at law may be enjoined from prosecuting their suits, and from disputing the title and possession of the Somerset Railway, and for further relief.

That the bill presents a case within the equity jurisdiction is beyond doubt. Revised Statutes of 1871, chapter 51, § 53, and following sections, in force when this mortgage was made, prescribed a method of foreclosure of such mortgages by the trustees on application of one-third of the bond-holders in amount ; and by section 55 it was provided that such foreclosure should enure to the benefit of all holders of bonds and coupons secured by the mortgage, and that the holders of such bonds and coupons or their successors or assigns become a corporation as of the date of the foreclosure, " for all the purposes, with all the rights and powers, duties and obligations of the original corporation by its charter," and required the trustees to convey to such new corporation all the right and title they had under the mortgage and its foreclosure. Section 56 provided for calling the first meeting of the new corporation, adopting a name, and authorized the new corporation to take and hold the possession and have the use of the mortgaged property.

These provisions for perfecting the security of the mortgage bond-holders, and to enable them to realize their debts, by operation of law, must be treated as part of the mortgage contract, and the rights thereby secured to the bond-holders could not be abridged or taken away by subsequent enactments. But it was competent for the law-making power to change the form and method of the bond-holders' remedy, provided the new method protected their rights as fully as that existing when the mortgage was given. *Von Hoffman* v. *City of Quincy,* 4 Wall. 535 ; *Seibert* v. *Lewis,* 122 U. S. 294 ; *Edwards* v. *Kearzey,*

96 U. S. 595; *Louisiana* v. *New Orleans*, 102 U. S. 206. Without changing the manner of foreclosure provided in R. S., of 1871, c. 51, the Legislature in 1876, by chapter 122, gave the benefit of the provisions of chapter 51, from § § 47 to 70 inclusive, to the holders of all mortgage bonds, whether the mortgage was foreclosed as provided in chapter 51, "or in any other legal manner;" and by chapter 53 of the laws of 1878, § § 47 to 70 of chapter 51 of R. S., of 1871, were made to apply to and include all such mortgages, "in all cases in which the principal of said scrip or bonds shall have been due and payable for more than three years, and shall remain unpaid in whole or in part, in the same way and to the same extent as if the mortgage had been legally foreclosed;" and authorized such bond-holders to form a new corporation, in the manner provided in chapter 51 of R. S., of 1871, "whenever the holders of such scrip or bonds to any amount exceeding one-half of the same shall so elect in writing." The same statute in § 2 provided that the "capital stock of such new corporation shall be equal to the amount of unpaid bonds and coupons secured by such mortgage, taken at their face at the time of the organization of the new corporation;" and by chapter 166, laws of 1883, the act of 1878 was extended to apply to cases in which "no interest has been paid for more than three years."

The remedy by foreclosure by the trustees, existing when the mortgage of 1871 was given, has never been abridged or taken away; but the subsequent statutes have enlarged and made more efficient the bond-holders' remedy; but these enactments did not operate injuriously to the Somerset Railroad Company, and are not therefore open to constitutional objection. The trustees had no power to take possession of the mortgaged property, nor to foreclose the mortgage, except directed so to do by a vote of the bond-holders, by a majority in value in the one case, or one-third in value in the other. R. S., of 1871, c. 51, § § 49-53. The new provisions in the subsequent acts, enabled a majority in amount of the bond-holders to act directly without the intervention of the trustees, thus simplifying the proceeding.

The interest upon the mortgage bonds having been unpaid for more than three years prior to July 11, 1883, the bond-holders, holding $351,900 in amount of the bonds secured by the mortgage, on that day elected in writing to form a new corporation, in accordance with chapter 51 of the Revised Statutes of 1871 as amended by the acts of 1878 and 1883, instead of resorting to a foreclosure by the trustees. It will be noticed that the amendatory acts required the action of a majority in amount of the mortgage bond-holders, while the foreclosure by the trustees required the concurrence of only one-third of the amount. The proceedings to organize the new corporation and establish the capital stock, under the amendatory acts, appear to be in strict conformity thereto; and the new corporation, under the name of the Somerset Railway, thereby became a legal corporation, on the fifteenth day of August, 1883, and then became entitled to "take and hold the possession and have the use of the mortgaged property." R. S., 1871, c. 51, § 56. The fact that some holders of mortgage bonds, who participated in the organization of the new corporation, and voted upon their bonds, have since transferred them to other parties not bond-holders at the time the Somerset Railway was organized, cannot affect the status of the corporation. The bonds being once voted, are subjected to the consequences of that vote, regardless of whose hands they may subsequently fall into. It is not in the power of a bond-holder, participating in the formation of a new corporation, based upon his bonds with others, to destroy the existence of the corporation, once legally formed, by a subsequent transfer of his bonds to third parties. *Barnes* v. *Chicago, Milwaukee & St. Paul R. R.* 122 U. S. 1. The new corporation took possession of the mortgaged property on the first day of September, 1883, and has ever since held it and operated the railroad. This action was authorized by the statute, consented to by the Somerset Railroad Company, the mortgagor, actively proposed and aided by one at least of the trustees, and ever since acquiesced in by all the trustees. It is too late for the trustees, or dissenting bond-holders, now to object to technical irregularities, if any exist; especially as the Somerset Railway has since extended

the railroad from North Anson to Bingham, a distance of about sixteen miles, built a branch railroad of one mile in length of great importance to the productiveness of the main line, placed a mortgage upon the road for $225,000 to make these extensions and other improvements, and in other ways materially changed the condition and relations of all parties interested in the road. Their long acquiescence, without objection, coupled with the changed conditions and relations, resulting from the possession and management of the property by the Somerset Railway, estops them from now questioning the legality of the organization of the new corporation. *Kent* v. *Quicksilver Mining Company*, 78 N. Y. 159 ; *Zabriskie* v. *Cleveland Railroad*, 23 How. 395 ; *Halstead* v. *Grinnan*, 152 U. S. 412 ; *Harwood* v. *Railroad Company*, 17 Wall. 78 ; *Railroad* v. *Railroad*, 65 N. H. 400.

The case shows, that on July 8, 1884, all the right in equity which the Somerset Railroad Company had to redeem from the mortgage was legally sold on execution to the Somerset Railway, from which no redemption was had. It follows that on July 8, 1885, when the time for redemption from the execution sale expired, the Somerset Railway, representing all the mortgage bond-holders, held the legal and full title to the equity of redemption which the Somerset Railroad Company had before held, and also the equitable, beneficial title under the mortgage, and was in full, entire and exclusive possession and use of all the property described in the mortgage. And as the trustees had no beneficial interest under the mortgage, and held only a dry trust, with no duties to perform under it, they could not interfere with the title or possession of the Somerset Railway. It had become the duty of the trustees to release their naked legal title to the Somerset Railway. R. S., of 1871, c. 51, § 55. And as equity regards that as done which ought to be done, the title of the Somerset Railway to all the property described in the mortgage must in equity be regarded as full and complete, and will be absolute at law when the trustees release their naked legal title, which they are required to do.

The title thus acquired to the mortgaged property, operated as payment of all the bonds secured by the mortgage, if the mortgaged property was of sufficient value over and above the amount paid for the equity of redemption; if not, all the bonds must be regarded as paid pro tanto, and the balance remains an unsecured debt against the Somerset Railroad Company. But as the life and existence of the Somerset Railway was based upon and derived from the mortgage bonds, and the corporation was in fact the mortgage bond-holders in organization, its title and possession enured to the benefit of all holders of bonds and coupons secured by the mortgage; and every bond-holder became a share holder in the property in the proportion the bonds held by him bore to the whole issue under the mortgage. This result follows, even if some of the bonds had passed into other hands since the organization of the bond-holders in the new corporation, and before the title had ripened in that corporation. *Haynes* v. *Wellington*, 25 Maine, 458; Jones on Mortgages, § 950; *Hurd* v. *Coleman*, 42 Maine, 182; *Hatch* v. *White*, 2 Gall. C. C. 152.

Any subsequent transfer of the mortgage bonds, unexchanged for stock, operated only as a transfer of the bond-holders' share in the property originally conveyed by the mortgage, if the property was of sufficient value to pay all the mortgage bonds and the amount paid for the equity of redemption for the mortgage; if insufficient for that, the transfer of the bonds carried that share as property, and the balance of the bonds unpaid by the property as an unsecured debt of the Somerset Railroad Company. *In Re Bond-holders of York & Cumberland Railroad*, 50 Maine, 564.

But it is claimed that the action of this court, in *Anson, Petitioners*, 85 Maine, 79, appointing a trustee under the mortgage of July 1, 1871, to fill a vacancy, was a decision upon the question involved here, and that the status of the bond-holders who have exchanged their bonds for stock of the Somerset Railway and the holders of mortgage bonds unexchanged, is res adjudicata. Not so. The case was a petition for appointment of a trustee to fill a vacancy caused by death of an original trustee; and the court expressly says: " The rights of the

different bond-holders are not now to be distinguished, for all the facts which might have a tendency to create differences are not now before us, and any attempt to settle all the conflicting claims, suggested by the history of the enterprise, would be premature.    We do not now undertake to decide the relative equities between the outstanding bonds and those which were surrendered and cancelled in exchange for the stock of the new corporation, nor to decide the status of the new organization and its new issue of bonds."

The court, in that case, carefully refrained from determining the rights and powers of the trustees, or the rights of the new corporation, or of the mortgage bond-holders.    It did not have before it a case calling for or authorizing such determination. It was mainly because the questions involved in this suit could not be determined in that, that the trustee was appointed, to avoid possible delay or confusion in determining the rights of all parties, and to afford the means to bring the whole case before the court, with no embarrassment from lack of parties.

The mortgage coupled with the purchase of the equity has ripened into full title, and ceased to have the character of a mortgage.    It is now only valuable as a muniment of title, which has been perfected in the beneficiaries under the mortgage. There remains no property for the mortgage to operate upon. The trustees hold only a dry trust, without beneficial interest, with no duties to perform, except to release and transfer to the Somerset Railway the bare legal title which they held under the mortgage, which is now but a cloud upon the title of the Somerset Railway.    This they must do on payment of any amount that may be due them for services or disbursements. As to them and their office, the mortgage is functus officio, and they cannot interfere with the title or possession of the Somerset Railway, rightfully holding the property as representing the mortgage bond-holders.

It appears that in April, 1883, before the formation of the Somerset Railway, Reuben B. Dunn and others, holding more than one-half of the entire issue of bonds under the mortgage of July 1, 1871, in behalf of themselves and all other holders of

bonds secured by the mortgage, brought a bill in equity in this court, in the county of Kennebec, against the Somerset Railroad Company, praying a decree of foreclosure of this mortgage for breach of condition. The trustees were not made parties to this bill, as they properly should have been, but no objection appears to have been made on that account. A decree was entered in the suit at a term of this court held on the third Tuesday of October, 1884, that if the Somerset Railroad Company should pay the over-due coupons on or before the first day of July, 1885, the complainants should take nothing by their bill, but if not so paid that the right of redemption should be barred. The amount not being paid at the time mentioned in the decree nor afterward, a final decree of strict foreclosure was entered on the thirty-first day of March, 1887. Revised Statutes, of 1871, c. 51, provided a method for foreclosure of railroad mortgages by trustees. Chapter 166 of the laws of 1883, § 4, provided that where the principal of any bonds issued by a railroad corporation, secured by mortgage shall have been due and payable more than three years, "or no interest has been paid thereon for more than three years, a corporation formed by the holders of such scrip or bonds, or if no such corporation has been formed, the holders of not less than a majority of such scrip or bonds, may commence a suit in equity for the purpose of foreclosing such mortgage; and the court may decree a foreclosure of such mortgage, unless the arrears are paid within such time as the court may order."

Aside from the foreclosure proceedings authorized by the trustees, equity furnishes the best, and perhaps now the exclusive, forum for foreclosure of this class of mortgages. The ordinary method of foreclosure of mortgages on real estate is ill adapted to the foreclosure of railroad mortgages. The protection of all the large interests usually involved in the latter, may require a receivership, or an injunction, or an order of sale, none of which can be accomplished by the ordinary proceedings for foreclosure, but can easily be provided for by the flexible processes of equity. The case of *Kennebec & Portland Railroad* v. *Portland & Kennebec Railroad*, 59 Maine, 1, holding otherwise, was decided

when the equity powers of this court were limited, and is not applicable under the full equity powers now possessed.

When the bill was filed by Dunn and others, no corporation of the bond-holders had been formed, and the bill was properly brought and maintainable under the statute last cited, and might have been sustained under the full equity power then existing in this court. Before the final decree was entered, all right and title of the Somerset Railroad Company had been divested, by the sale of its equity on execution, to the Somerset Railway, and it had no further interest in the property, or the proceedings in the equity suit; and it was therefore unnecessary to continue the equity suit for foreclosure to a final decree, but it was done, perhaps, from extra caution. The Somerset Railroad Company might have complained that the decree limited the right of redemption to a shorter time than the law allowed it under the mortgage, if it had retained any interest in the property. Having parted with its interest, it could not be injured by the decree. The bill being for the benefit of the bond-holders, and the decree, if valid, operating to perfect their title to the mortgaged property, they can hardly be heard to complain. But whether this decree was valid or not, we are not called upon to decide, as we do not deem it material to the determination of the rights of these parties.

When the new corporation was formed and took possession of all the mortgaged property, and acquired the right of redemption from the mortgage from the Somerset Railroad Company, all the holders of bonds secured by the mortgage then became share holders in the property, to which they then had the entire title and beneficial interest. The capital of the new corporation was exactly the amount of the outstanding bonds and coupons secured by the mortgage. This corporation proposed to issue its stock to the holders of bonds and coupons, upon surrender of the bonds and coupons, at the rate of one share of stock, of the par value of one hundred dollars, for the same amount in bonds and coupons. This proposition has been accepted and acted upon by the holders of bonds and coupons to the amount

of $552,200, leaving outstanding bonds to the amount of $110,-600 and the unpaid over-due coupons thereon. This exchange of bonds for stock does not lessen or enlarge the rights of the holders of unexchanged bonds. They were all paid, so far as the value of the mortgaged property in excess of amount paid for the equity of redemption was sufficient to do so; and thenceforward the bonds, so far as paid, became evidence of the amount of interest the holder had in the railroad property, and not of a debt, the balance only being evidence of a debt for such balance. The Somerset Railway stood in the place of and represented all the mortgage bond-holders; its stock, when issued in exchange for bonds, practically represented the bondholders' share in the property; the unexchanged bond represented the same and no more. The Somerset Railway can only issue its stock in exchange for mortgage bonds and coupons. It cannot sell and issue it to other parties. If any bond-holder declines ultimately to exchange his bonds for stock, an amount of stock of the company equal to such bonds cannot be issued at all. The capital stock of the Railway represents the bonds, and stands for them.

It was and is optional with the bond-holder to exchange his bonds for stock; he cannot be compelled to do so. The Somerset Railway, representing all the mortgage bond-holders, and being simply the bond-holders in organization, is entitled to hold, possess and operate the property. Its net earnings, when distributed in the form of dividends or otherwise, must be distributed to its stockholders and to the holders of unexchanged bonds in equal proportions.

If the holders of unexchanged bonds choose to take stock, they can do so at any time; or, if they choose, they can retain their present position, and receive their share of the net earnings pro rata with the stockholders. If they become dissatisfied with this position, and decline to take stock, upon a proper bill and sufficient equitable cause shown they may have partition of the property, as between equitable tenants in common, if practicable; or, if that is impracticable, as it probably would be, a decree of sale of the railroad property, subject to legal incumbrances, and

division of the proceeds, on the basis of taking the entire amount due on the $450,000 of bonds and unpaid coupons at the date of the organization of the new corporation, and apportioning the proceeds pro rata among the holders of stock in the Railway and the outstanding unexchanged bonds, thus doing exact justice to all. Pomeroy's Equity, § § 1388, 1389, 1390; *Nash* v. *Simpson*, 78 Maine, 142.

It appears that the Somerset Railway, on the first day of October, 1887, for the purpose of extending and improving the road and its equipment, made a mortgage of its entire property to trustees to secure the payment of its bonds to the amount of two hundred and twenty-five thousand dollars, all of which have been issued, sold, and are now outstanding; the proceeds being used in extending and improving the road. The mortgage of July 1, 1871, having exhausted its office and become inoperative as an existing mortgage, by union of the legal right of redemption and the equitable, beneficial title under the mortgage, to all the property described therein in the Somerset Railway, representing all the mortgage bond-holders,— the mortgage for $225,000 has become the first mortgage upon the road and its property. Whether the property was sufficient to pay the mortgage debt of July 1, 1871, or not, there is nothing more for it to operate upon.

The trustees must release and convey whatever title and interest may be in them to the Somerset Railway, on payment of any amount that may be due them for services and disbursements. A master to be appointed to ascertain and report the amount.

The trustees, Lewis Pierce, Herbert M. Heath, and Franklin M. Drew, must be perpetually enjoined from the further prosecution of their pending suits and from interfering in any way with the title, possession or use, by the Somerset Railway, of any and all the property described in the mortgage of July 1, 1871, except so far as it may be necessary for them, by suitable legal process, to enforce any lien, if any, which they may have upon the property, for the payment of such sums as may be found due them for services and disbursements as such trustees; and the

trustees must be commanded and enjoined to release and convey to the Somerset Railway all right and title they hold as trustees under the mortgages of July 1, 1871, upon payment of their charges.

> *Bill sustained with costs, against the trustees Pierce, Heath and Drew, and dismissed as to all the other respondents. Decree in accordance with this opinion.*