Michael L. HAMMOND, Appellant (Defendant),

v.

Jody M. HAMMOND, Appellee (Plaintiff).

No. 00–72.

Supreme Court of Wyoming.

Nov. 3, 2000.

Representing Appellant: Dwight F. Hurich of Hurich Law Office, Gillette, Wyoming.

Representing Appellee: Peggy Taylor, Gillette, Wyoming.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL & KITE, JJ.

KITE, Justice.

Appellant Michael L. Hammond (the father) appeals from the judgment which was entered in favor of Appellee Jody M. Hammond (the mother) for unpaid child support and accumulated interest. We conclude that the doctrine of laches does not apply to claims for past-due child support which are not time barred under the applicable statute of limitations. Finding no error, we affirm.

## ISSUES

The father presents the following issues for our review:

A. Did the district court err in finding the defendant failed to carry the burden of proof regarding proof of payment of child support between July 1977 and November 1981?

B. Did the district court err in failing to apply the doctrine of laches regarding the issue of payment of contested child support payments between July 1977 and November 1981?

The mother phrases the issues in this manner:

A. Were the district court findings supported[?]

B. The district court did not err in finding that laches does not apply in this case.

## FACTS

The parties were granted a divorce on October 13, 1976, in Campbell County. Two children were born of the marriage. The district court gave the mother custody of the children and ordered the father to pay child support in the amount of $125 per month per child. From October 1981 to the latter part of September 1982, approximately ten months, the parties lost contact, and the father failed to make child support payments during that time. On October 20, 1982, the father signed a relinquishment of parental rights and consent to adoption, and the mother's new husband adopted the children on November 22, 1982. As a result of the relinquishment and adoption proceeding, the father's support obligation, which began in October of 1976, ended in November of 1982.

The mother demanded payment of child support arrearages in 1995, approximately thirteen years after the father's support obligation terminated. The father was unable to retrieve his complete bank records for the period he was obligated to pay child support because three of the four banks he had banked with stated that they kept records for only five to seven years. However, he was able to retrieve his bank records for the period beginning January 1981 through October 1981 and show he had made some of the payments that the mother was demanding. The father later received credit for those payments. The mother also established through her 1977 income tax return that the father had paid $2,400 in child support for that year. The disputed principal amount remaining was $12,950.

The mother filed an ex-parte motion for an income withholding order on February 10, 1997. The district court entered an Order for Immediate Income Withholding for Child Support and a Notice to Payor to Withhold Income for Child Support on March 13, 1997. On March 24, 1997, the district court granted the father's motion for relief from the ex-parte motion pending a hearing. The hearing was held on March 17, 1998.

On November 18, 1999, nearly two years after the hearing was held, the district court issued its decision letter in which it determined that the mother's claims were not

barred by the applicable statute of limitations and the father's laches claims were not effective. The district court filed its Order Setting Amount of Arrearages Against Defendant, Setting Judgment Amount, and Allowing Income Withholding to Proceed on December 21, 1999, incorporating this decision. The arrearage was comprised of the principal plus ten percent interest, totaling $18,378.36. The father appeals to this Court.

## DISCUSSION

### A. Laches

■ The father asserts that, although the action for unpaid child support was commenced within the statute of limitations, the application of the equitable doctrine of laches is appropriate in this case. We disagree.

At the hearing, a factual dispute arose as to whether and when the father made child support payments. The mother asserts that the father failed to pay support from September of 1977 through November of 1982 except for the payments he made in 1981, some of which were less than his support obligation. The father claims he made child support payments up to October 1981; however, he does admit there were times when he failed to pay the entire amount. In addition, the father concedes that he did not make child support payments from October 1981 through September 1982. He contends that, due to the mother's delay in initiating an action, he has been put in the untenable position of having to provide evidence of payments for which the records have been destroyed and thus the doctrine of laches should apply.

■ The district court determined that the doctrine of laches does not apply to child support judgments which are not barred by the statute of limitations. The district court based its decision upon a legal conclusion that judgments are not subject to the defense of laches rather than a finding that the doctrine of laches was not applicable to the facts in this case. This Court considers the district court's conclusions of law under a *de novo* review. *Hutchison v. Hill*, 3 P.3D 242, 245 (Wyo.2000).

■■ "The defense of laches 'is a form of equitable estoppel based on a[n] unreasonable delay by a party in asserting a right.'" *Goshen Irrigation District v. Wyoming State Board of Control*, 926 P.2d 943, 949 (Wyo. 1996) (quoting *Squaw Mountain Cattle Company v. Bowen*, 804 P.2d 1292, 1297 (Wyo. 1991)). "Laches is an equitable defense, and its applicability depends upon the circumstances of each case." *Moncrief v. Sohio Petroleum Company*, 775 P.2d 1021, 1024–25 (Wyo.1989); *see also Meyer v. Norman*, 780 P.2d 283, 290 (Wyo.1989). This Court has noted:

> "The length of time during which the party neglects the assertion of his rights which must pass in order to show laches varies with the peculiar circumstances of each case, and is not, like the matter of limitations, subject to an arbitrary rule. It is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to now assert them."

*Anderson v. Wyoming Development Co.*, 60 Wyo. 417, 154 P.2d 318, 346 (Wyo.1944) (quoting *Halstead v. Grinnan*, 152 U.S. 412, 14 S.Ct. 641, 643, 38 L.Ed. 495 (1894)).

■ The party asserting the doctrine of laches must show that he relied upon the plaintiff's actions and changed his position in reliance thereon to his prejudice. "'Unless the delay has worked injury, prejudice or disadvantage to the defendants or others adversely interested, it is not of itself laches.'" *Murphy v. Stevens*, 645 P.2d 82, 91 (Wyo. 1982) (quoting *Hartnett v. Jones*, 629 P.2d 1357, 1364 (Wyo.1981)). The burden is on the party who asserts the doctrine of laches to prove prejudice. *Id.*

We have held that "periodic child support payments are judgments arising by operation of law." *Hollingshead v. Hollingshead*, 942 P.2d 1104, 1107 (Wyo.1997). *Hollingshead* provides the applicable standard of review for cases involving child support awarded prior to 1989:

> Because the decree that awarded periodic child support payments prior to 1989 is cognizable as a judgment rather than a

liability created by statute, it is appropriate to apply the statute of limitations relating to judgments to the pre–1989 situation exactly as it is applied to the post 1989 situation. Pursuant to Wyo.Stat. § 1–17–307, since the mother did not execute on these judgments within five years, the judgments became dormant. Although dormant, the judgments were subject to revival within twenty-one years, and revival occurred when the State filed its motion on behalf of the mother. Wyo.Stat. § 1–16–503. The result is that none of the unpaid child support payments are time barred in this instance.

942 P.2d at 1107–08.

This analysis is applicable to the present case; therefore, the mother's claims for child support are not time barred. The judgments in the present case arose prior to 1989. The mother did not execute on these judgments within five years of when they became due, and the judgments became dormant. However, the mother revived the judgments when she brought a collection action against the father within twenty-one years. Wyo.Stat. Ann. § 1–16–503 (LEXIS 1999).

The mother argues that *Hollingshead* stands for the concept that child support arrearages are judgments as a matter of law and, if her claim is not time barred under the statute of limitations, a mother cannot lose the right to collect because she failed to use the legal process. The father asserts that *Hollingshead* is not controlling as it can be distinguished from the present case. He contends the significant difference is that in *Hollingshead* the issue of whether child support was paid was not controverted. In that case, both parties agreed that no child support had been paid, and the only remaining issue was whether the statute of limitations had run. However, in the instant case, the father argues that he did make payments but his opportunity to provide proof of those payments had been frustrated by the mother's delay in raising the issue and, therefore, the doctrine of laches was applicable. Although this argument is facially convincing, it disregards the limits of equitable relief, the effect of judgments, and the policy underlying a child support award.

In *State Department of Revenue, Child Support Enforcement Division ex rel. Valdez v. Valdez,* 941 P.2d 144, 152 (Alaska 1997), the Alaska Supreme Court stated that the defense of laches is not available in child support collection actions because suits for monetary judgments for child support arrearages are legal rather than equitable. The *Valdez* court stated:

"When a party is seeking to enforce a legal right, as opposed to invoking the discretionary equitable relief of the courts, the applicable statute of limitations should serve as the sole line of demarcation for the assertion of the right," and equitable defenses are not available. *Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.,* 694 P.2d 150, 157 (Alaska 1984). . . . Whether an action is legal or equitable depends on the relief sought.

941 P.2d at 152. This reasoning is persuasive. In this case, the mother sought a monetary judgment for child support arrearages; therefore, this dispute was legal rather than equitable. The mother's claim was within the umbrella of the applicable statute of limitations, and as a result, the equitable remedy of laches was not available.

Furthermore, we recognize that important policy reasons support the enforcement of a child support order. This Court has noted that child support orders have a unique and special position in the law. *Sue Davidson, P.C. v. Naranjo,* 904 P.2d 354, 356 (Wyo.1995). We have stated that child support payments are the children's monies:

Often misunderstood by parents embittered by divorce, "child support" represents a legal obligation of the parents to the children. "[C]hild support is for the benefit of the children as [a parent's] obligation to contribute to the upbringing of [the] children. A support payment is the children's money administered in trust by [the custodial parent] for their benefit."

*Cranston v. Cranston,* 879 P.2d 345, 349 (Wyo.1994) (quoting *Macy v. Macy,* 714 P.2d 774, 777 (Wyo.1986)). Child support is indeed the children's money to be used for their exclusive benefit. *Sue Davidson, P.C.,* 904 P.2d at 357. As we acknowledged in

*Hurlbut v. Scarbrough*, 957 P.2d 839, 842 (Wyo.1998): "[B]ecause a child support obligation does not belong to the custodial parent, that parent does not have the authority to bargain it away." Equity cannot operate to override this basic policy behind the enforcement of a child support order. Following this reasoning, we conclude that the right to obtain support is not waived by the custodial parent's inability to act, inaction, or acquiescence to the nonpayment of child support if an action is brought within the statute of limitations. In addition, it is of no consequence that the arrearage will be paid to the mother rather than directly to the grown children. "Money paid to the custodial parent for past-due support serves to reimburse the custodian for monies actually expended." *Capetillo v. Kivett*, 85 Wash.App. 311, 932 P.2d 691, 694 (1997).

Although our determination that the doctrine of laches does not apply to claims for unpaid child support is dispositive, we doubt the father could have availed himself of the protection afforded by the doctrine. "One of the basic tenets of equity is that equitable remedies depend upon a showing by the claimant of clean hands: 'He who comes into equity must come with clean hands.'" *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 959 (Wyo.1999) (quoting *Dutch Maid Bakeries v. Schleicher*, 58 Wyo. 374, 131 P.2d 630, 634 (1942)). The father admitted he owed child support for approximately ten months preceding the adoption of his children. The record does not show that the father made any effort to pay this acknowledged child support debt. Therefore, the father does not have "clean hands."

**B. Burden of Proof**

Having conceded he owed child support for the ten months preceding the children's adoption, the father contends he provided credible and persuasive evidence that he satisfied the remainder of his child support obligation. The district court disagreed and found the father failed in his burden of proof.

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are pre-sumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Fremont Homes, Inc.*, 974 P.2d at 958 (citations omitted). Although we recognize the factual dispute in the evidence, we give deference to the judge's opportunity to assess the credibility of the witnesses. *Id.* On the basis of a careful review of the entire record before this Court, we cannot conclude that the district court's findings were clearly erroneous.

Affirmed.